ALAN ROTHENBUECHER, Plaintiff-Appellee, *v.* MARGARET A. TOCKSTEIN *et al.*, Defendants.—(MARGARET A. TOCKSTEIN, Defendant-Appellant.)

Fifth District   No. 79-535

Opinion filed September 18, 1980.

Weihl & Millard, Ltd., of Belleville (Donald E. Weihl, of counsel), for appellant.

Storment, Stegmeyer & Read, of Belleville (P. Michael Read, of counsel), for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

The defendant, Margaret A. Tockstein, appeals from an order granting the plaintiff below, Alan Rothenbuecher, specific performance of a sale contract to purchase certain real property located in Belleville, Illinois. The judgment, entered October 4, 1979, in the circuit court of St. Clair County is challenged upon the grounds that (1) no valid contract of sale existed

between the parties under the facts presented, and (2) that the trial court's dismissal of a party whose signature appeared on the instrument in question as a co-signing buyer necessitated dismissal of the cause against the appellant as well. Because of our resolution of the former issue we do not reach the latter. Judgment is reversed.

Defendant signed her own name and the name of her mother, Hazel B. Jones, to a form contract of sale supplied by an agent of Ira E. Berry, Incorporated, a realty company, for the purpose of a duplex located at 27 and 29 Coral in or near the city of Belleville, Illinois, on the evening of July 9, 1979. The parties agree that as initially signed by her, the instrument constituted an offer to purchase the property for the sum of $80,500. In conjunction with the offer, Tockstein tendered a check in the amount of $500 as earnest money which was never successfully negotiated by the offeree due to a stop payment order placed with the offeror's bank. The instrument specified that the offer to purchase was made "subject to the approval of the owner [appellee herein] * * * within * * *" one day. It was to be transmitted to the seller by his sales agent, Barbara Olsson, an employee of the Ira E. Berry Company, who had shown the property to Tockstein. Rothenbuecher testified that he returned from a trip to the Bahama Islands on the afternoon of July 10, 1979, and was presented with the written offer that evening by another employee of the realtor, at which time he assented by placing his signature at the bottom of the proposed contract. It appears that no notice of Rothenbuecher's interest in accepting the offer was communicated to the defendant at any time on July 10. Although she expressed some doubt as to the accuracy of her memory concerning the specific date, Olsson's testimony indicated that actual notice of Rothenbuecher's interest was given to the prospective buyer by telephone on July 11. During their conversation the defendant requested that an additional clause be inserted in the proposal allowing a contractor to inspect the premises in order to assure that it met with the buyer's approval. This inspection was accomplished on July 13. On July 15 the defendant informed Olsson by telephone that she no longer wished to purchase the property and withdrew her offer. Two days later plaintiff filed this claim seeking specific performance. Physical delivery of the written acceptance signed by the seller was accomplished on July 23, 1979.

■■■ By definition, a prerequisite to the application of this extraordinary remedy is the existence of a valid contract. The agreement must be an accomplished fact binding on the parties and resulting from an offer, duly accepted by the offeree. Where such a contract is in doubt, so that an obligation to fulfill the alleged promise may never have arisen, equity will decline to enforce performance. (*Milani v. Proesel* (1958), 15 Ill. 2d 423, 430, 155 N.E.2d 38.) The mutual assent necessary to the formation of a bilateral contract, such as the one here contemplated, requires the communicated

expression of a promise to purchase and an acceptance in the form of a promise to sell. (See generally Restatement (Second) of Contracts §§1, 19 (1973).) The appellant argues that no valid contract was formed under the present circumstances. We agree with that conclusion because of certain facts regarding the terms of the offer, its retraction and Rothenbuecher's failure to timely communicate acceptance.

■■ Tockstein signed an instrument prepared by the seller's agent, thus creating the offer with which we are concerned. That offer was conditioned on "approval" by the seller within a 24-hour period. We can find no other logical meaning in the term "approval" than acceptance of the tendered offer. If it were to stand for less than acceptance, it would merely amount to a promise to consider the terms advanced as a legitimate offer. Therefore, acceptance is required in the very terms of the offer by means of a promise to perform communicated within a day. It is the essence of a valid acceptance that it be objectively manifested by or on behalf of the offeree. Otherwise an offeree's assent could remain undisclosed and while he might find the terms of an offer agreeable, he could, for example, hold assent in reserve while other offers were entertained. No meeting of the minds would in fact occur. The Restatement defines acceptance as "a manifestation of assent" requiring the offeree to "* * * complete every act essential to the making of the promise" (Restatement (Second) of Contracts §52(1), (3) (1973)), and concludes:

"Unless the offer provides otherwise,

(a) an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent *as soon as put out of the offeree's possession*, without regard to whether it ever reaches the offeror; * * *." (Emphasis added.) Restatement (Second) of Contracts §64(a) (1973).

As we have stated, it is without dispute that no communication of acceptance occurred on July 10 as the offer required and that no physical delivery of acceptance occurred until July 23, six days after this suit was instituted. At best, the signed agreement constituting a purported acceptance was given to the seller's agent on the evening of July 10. However, this was inadequate to communicate acceptance, since it cannot be said that as a matter of legal effect this put the manifestation of assent out of the offeree's possession. While still in the hands of his agent, and without notice to the offeror, the seller could have at any time during the period of the condition given instructions that his acceptance be revoked. (See Restatement (Second) of Contracts §64(a), Comment e (1973).) The appellant withdrew her offer on July 15, and it is elementary that an offeree's power to accept is terminated by either revocation of the offer (*Brach v. Matteson* (1921), 298 Ill. 387, 392, 131 N.E. 804; *Miller v. Illinois Life Insurance Co.* (1930), 255 Ill. App. 586, 589; Restatement (Second) of Contracts §35(1)(c)

(1973)) or the "non-occurrence of any condition of acceptance under the terms of the offer." (Restatement (Second) of Contracts §35(2) (1973); see also *Brach v. Matteson* (1921), 298 Ill. 387, 393.) And hence, under these facts, no contract resulted between the parties. (Restatement (Second) of Contracts §34(2) (1973).) There being no agreement to enforce, we find it necessary to reverse the judgment of the circuit court of St. Clair County.

Reversed.

JONES, P. J., and KASSERMAN, J., concur.