# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Robinson*, 2012 IL App (4th) 101048

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFRED D. ROBINSON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-1048 |
| Filed<br>Rehearing denied | August 27, 2012<br>September 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defense counsel was not ineffective in rejecting defendant's request that counsel serve only as conduit during plea negotiations. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 07-CF-194; the Hon. Scott Drazewski, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield,
and Alan D. Goldberg and Christopher L. Gehrke (argued), both of State
Appellate Defender's Office, of Chicago, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino,
Robert J. Biderman, and Denise M. Ambrose (argued), all of State's
Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel      JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justice Appleton concurred in the judgment and opinion.

Justice Cook specially concurred, with opinion.

## OPINION

¶ 1      In this case, we are asked to determine whether defense counsel is ineffective when he rejects a defendant's directive that counsel serve essentially as merely the defendant's conduit during guilty-plea negotiations. We conclude that he is not, given that a criminal defendant's role in guilty-plea negotiations when he is represented by counsel is limited to accepting or rejecting the agreement for a guilty plea that defense counsel and the prosecutor have reached.

¶ 2      In February 2007, the State charged defendant, Alfred D. Robinson, with unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(B) (West 2006)) and unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2006)). In April 2007, the State charged defendant with unlawful possession of cannabis (720 ILCS 550/4(b) (West 2006)). Following an August 2007 trial, a jury found defendant guilty of all three charges, and the trial court later sentenced him to 12 years in prison. Defendant appealed, and this court affirmed. *People v. Robinson*, No. 4-07-0899 (Mar. 3, 2009) (unpublished order under Supreme Court Rule 23).

¶ 3      In August 2009, defendant *pro se* filed a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-8 (West 2008)), complaining, in pertinent part, that he was denied his constitutional right to the effective assistance of counsel when his attorney, Terry Dodds, failed to communicate to the State his desire to accept the State's guilty-plea offer. After advancing defendant's petition to the second stage of postconviction proceedings, the trial court granted the State's motion to dismiss.

¶ 4      Defendant appeals, arguing that (1) the trial court erred by dismissing his postconviction petition because he was denied the effective assistance of trial counsel, given that Dodds

failed to communicate his desire to accept the State's guilty-plea offer, and (2) he should be afforded a new hearing because his postconviction counsel provided unreasonable assistance by failing to adequately present his *pro se* postconviction assertions. We disagree and affirm.

¶ 5                                                    I. BACKGROUND

¶ 6        In February 2007, defendant was traveling on Interstate 55 in a vehicle driven by his cousin. Illinois State Police Officer Brandon Smick initiated a traffic stop after observing the vehicle speeding and swerving. During the stop, Smick discovered an outstanding warrant for defendant's arrest. Shortly thereafter, a canine unit arrived to assist Smick. After walking around the vehicle, the canine indicated that narcotics were present. While searching the vehicle, the officers discovered 249.9 grams of cocaine and 2.6 grams of cannabis.

¶ 7        The State thereafter charged defendant with unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(B) (West 2006)) and unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2006)). At a March 2007 status hearing, Dodds explained to the trial court that the State had "extended an offer" and that he required a continuance in order to discuss that offer with defendant.

¶ 8        In April 2007, the State charged defendant with unlawful possession of cannabis (720 ILCS 550/4(b) (West 2006)). At a status hearing held shortly thereafter, the State sought a trial date because it had made "six different offers," which defendant had rejected, adding that there were "no ongoing negotiations."

¶ 9        At the July 23, 2007, status hearing, the trial court inquired into the status of the parties' ongoing guilty-plea negotiations, as follows:

"THE COURT: Is the [S]tate proceeding on all three counts?

[PROSECUTOR]: Yes, sir.

THE COURT: And although it is inferentially People versus Curry related, can you tell me, [prosecutor], if an offer, without specifying what the offer is, if an offer has been made for a disposition other than a conviction upon the most serious offense, that being a Class X felony.

[PROSECUTOR]: Previously, previously on multiple occasions, let's see, five occasions there was, but there is not one today.

THE COURT: So that's been withdrawn by the [S]tate?

[PROSECUTOR]: Correct.

THE COURT: All right. Just to confirm, this is primarily to go ahead and protect your attorney, that being Mr. Dodds, at a later point in time for being challenged by you, [defendant], that he didn't tell you what at this point in time, do I assume that Mr. Dodds has–are you aware of what the potential penalties are for that, for the most serious of the offer with intent to deliver?

THE DEFENDANT: No."

The court thereafter explained on the record the potential penalties for the charges that defendant was facing. The court then inquired into defendant's desire to proceed, as follows:

"THE COURT: Okay. And knowing that, is it still your desire then to proceed to trial?

THE DEFENDANT: No, I have attempted to accept the [S]tate's offer of eight years, but it has been declined.

THE COURT: Well, apparently that offer isn't there any more and so I cannot nor will I get involved in negotiations, but basically, at this point in time, if the offer has been withdrawn–

Did you need time to talk with Mr. Dodds about that?

THE DEFENDANT: Yes."

Following a brief recess, the colloquy continued as follows:

"THE COURT: Let the record reflect, following a recess where Mr. Dodds and [defendant] had an opportunity to confer privately in an adjoining conference room, that *** defendant returns in open court with Mr. Dodds, [the prosecutor] being present for the State.

Initially, Mr. Dodds, what can you advise me, if anything, with reference to how we'll be proceeding today?

MR. DODDS: Your Honor, the [S]tate has made a cap offer during the recess, I don't want to say what the number was, but [defendant] has declined the cap offer which I will state to the court that it was less than the maximum of the Class 1, so I can tell the court that it was 15 or less."

¶ 10 Following an August 2007 trial, a jury found defendant guilty of unlawful possession of a controlled substance, unlawful possession of a controlled substance with intent to deliver, and unlawful possession of cannabis. The trial court later sentenced him to 12 years in prison. Shortly thereafter, defendant sent a letter to the court explaining that Dodds (1) failed to communicate his June 29, 2007, acceptance of the State's offer to recommend an eight-year prison term to the court, (2) failed to explain that the State's sentencing cap offer applied only if he pleaded guilty, and (3) failed to be "supportive." The court responded to defendant's letter, explaining to defendant that Dodds would be receiving his letter and that he should speak to Dodds about filing the appropriate motion.

¶ 11 No further action was taken.

¶ 12 Defendant appealed, arguing that the trial court failed to conduct an adequate inquiry into his allegations of ineffective assistance of counsel. This court rejected defendant's argument, concluding that the court did not err because "the court rightfully relied on its own knowledge of the negotiation timeline in rejecting defendant's claim of ineffective assistance." *People v. Robinson*, No. 4-07-0899 (Mar. 3, 2009) (unpublished order under Supreme Court Rule 23).

¶ 13 In August 2009, defendant *pro se* filed a postconviction petition, complaining, in pertinent part, that he was denied his constitutional right to the effective assistance of counsel when Dodds failed to communicate to the State his desire to accept the State's eight-year offer. In his petition, defendant asserted that after the State made a guilty-plea offer of eight years, he asked Dodds to "see if he could get [seven] years, but if not, then let [the State]

know that [he would] take the [eight] years." Defendant further asserted that Dodds refused, resulting in the State's withdrawing its offer.

¶ 14    Defendant attached to his petition an affidavit, which contained the following assertions. Dodds informed him about the State's eight-year offer on May 30, 2007. Sometime after Dodds told him about the offer, defendant asked Dodds to "see if [he] could get it down to [seven] years, and if not, then, [he would] take the [eight] years." Dodds responded as follows: "I [am] not going back to ask for [seven] years." As a result, defendant and Dodds began arguing and defendant was "sent away."

¶ 15    Defendant also included with his petition a *pro se* letter that he sent to the prosecutor that was dated July 1, 2007, and file stamped by the State's Attorney's office on July 5, 2007. That letter read, in part, as follows:

> "I *** am writing to you to say that on [June 29, 2007,] my attorney[,] *** Dodds[,] ask[ed] you or you offered 8 years. I know this case is set for trial on [July 23, 2007,] but on [June 29, 2007,] I ask[ed] *** Dodds to ask you for 7 years and we could have been done with this case then. His response to me was [that] he can't do that."

¶ 16    Defendant also attached to his petition a signed letter from Dodds dated July 16, 2007. That letter read, in part, as follows:

> "I understand that you have written [the prosecutor] in an attempt to further negotiate a plea bargain for yourself. Due to the nature of the status of these proceedings, I would request that you discontinue such practice, and further request that should you have something that you would like to ask the prosecutor that you go through me as your agent and attorney. I have had countless conversations with him about this case, and the time for negotiation has come and gone.
>
> I am also writing you to confirm the status of these proceedings. You have been previously advised that the possible sentencing range of punishment in this case is from 9 to 30 years in the Illinois Department of Corrections, provided that you are convicted of the 'super x' count of unlawful possession with intent. As I have previously advised you, I am doubtful you can beat this count, despite weight being the only indicator of intent to deliver. While I think it is a legitimate argument that you did not intend to deliver, due to my experience with McLean County juries, I am doubtful that they will believe our argument.
>
> Lastly, just to confirm what I have previously told you, even were you to beat that count of unlawful [possession] with intent, it is seriously doubtful that the judge will give you a sentence of less than 8 years due to the weight and regardless of the fact that you were found not-guilty of the more serious offense; in other words, it will be a shallow victory. The judge may believe you intended to deliver the narcotics regardless of convincing the 12 jurors to the contrary and obtaining a not-guilty verdict. He would then likely sentence you to more than the minimum. Nonetheless, I have hopes that we can beat Count II.
>
> The above notwithstanding, I think that [the prosecutor] has revoked his previous offer of 8 years at this point. From my discussions with him[,] he seemed extremely agitated that you requested a 7[-]year offer after previously indicating that you would

[accept] 8 and after I had successfully negotiated your desired sentence with him; he has now informed me that the offer is again 9, although I have a feeling that he may again come down to 8, should you so desire."

¶ 17 In March 2010, the trial court advanced defendant's postconviction petition to the second stage of postconviction proceedings and appointed attorney Keith Davis to represent defendant. In August 2010, Davis filed a "Declaration To Stand on *Pro Se* Pleadings" and a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Apr. 26, 2012), averring that he had consulted with defendant, examined the record of proceedings at trial, and had made any amendments necessary to adequately present defendant's *pro se* claims. In September 2010, the State filed a motion to dismiss defendant's postconviction petition.

¶ 18 At a December 2010 hearing on the State's motion to dismiss, the State argued, in pertinent part, that defendant's claim that Dodds was ineffective because he failed to communicate defendant's desire to accept the State's eight-year guilty-plea offer because that argument was barred by the doctrine of *res judicata*, and, in any event, counsel was effective. Defense counsel Davis responded that he agreed with the State's position, but not its rationale. Davis concluded, and expressed to the trial court, that defendant's postconviction claims were "on shaky footing." As to defendant's claims of ineffective assistance of trial counsel, Davis indicated that the "tenor of most of the plea discussions" was that defendant "was willing to take X-number of years, [and he] was not given that."

¶ 19 The trial court then dismissed defendant's postconviction petition, finding, in pertinent part, as follows:

"[T]here was kind of a renewed assertion as it relates to an alleged deprivation of defendant's constitutional rights relating to a plea agreement or plea deal, and the record *** would indicate that no such agreement had ever been reached between the [S]tate and *** defendant, there was always a condition precedent, and so there was no meeting of the minds."

¶ 20 This appeal followed.

¶ 21                                  II. ANALYSIS

¶ 22 Defendant argues that (1) the trial court erred by dismissing his postconviction petition because he was denied the effective assistance of trial counsel, given that Dodds failed to communicate his desire to accept the State's guilty-plea offer, and (2) he should be afforded a new hearing because his postconviction counsel, Davis, provided unreasonable assistance by failing to adequately present his *pro se* postconviction assertions. We address defendant's contentions in turn.

¶ 23                    A. Defendant's Claim That the Trial Court Erred by
                             Dismissing His Postconviction Petition

¶ 24                    1. *Postconviction Proceedings and the Standard of Review*

¶ 25 In *People v. Andrews*, 403 Ill. App. 3d 654, 658, 936 N.E.2d 648, 652-53 (2010), this court outlined postconviction proceedings under the Post-Conviction Hearing Act, as

follows:

> "A defendant may proceed under the Act by alleging that 'in the proceedings which resulted in his or her conviction[,] there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both.' 725 ILCS 5/122-1(a)(1) (West 2006). In noncapital cases, the Act establishes a three-stage process for adjudicating a postconviction petition. 725 ILCS 5/122-1 through 122-8 (West 2006); *People v. Jones*, 213 Ill. 2d 498, 503, 821 N.E.2d 1093, 1096 (2004). At the first stage, 'the trial court, without input from the State, examines the petition *only* to determine if [it alleges] a constitutional deprivation unrebutted by the record, rendering the petition neither frivolous nor patently without merit.' (Emphasis in original.) *People v. Phyfiher*, 361 Ill. App. 3d 881, 883, 838 N.E.2d 181, 184 (2005). 'Section 122-2.1 [of the Act] directs that if the defendant is sentenced to imprisonment (rather than death) and the circuit court determines that the petition is frivolous or patently without merit, it shall be dismissed in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2004).' *People v. Torres*, 228 Ill. 2d 382, 394, 888 N.E.2d 91, 99-100 (2008).
>
> If a petition is not dismissed at stage one, it proceeds to stage two, where section 122-4 of the Act provides for the appointment of counsel for an indigent defendant who wishes counsel to be appointed. 725 ILCS 5/122-4 (West 2006). At the second stage, the State has the opportunity to answer or move to dismiss the petition. 725 ILCS 5/122-5 (West 2006). If the trial court does not grant the State's motion to dismiss or if the State has filed an answer, the petition proceeds to the third stage, where the defendant may present evidence in support of his petition. 725 ILCS 5/122-5, 122-6 (West 2006)."

¶ 26 Here, the trial court dismissed defendant's postconviction petition following a second-stage hearing on the State's motion to dismiss. "[T]he dismissal of a postconviction petition at the second stage is warranted only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Snow*, 2012 IL App (4th) 110415, ¶ 15, 964 N.E.2d 1139. We review *de novo* the trial court's dismissal of a postconviction petition at the second stage. *Id.*

¶ 27 　　　2. *Defendant's Contention That the Trial Court Erred by Dismissing His*
*Petition Because He Was Denied the Effective Assistance of Trial Counsel*

¶ 28 Defendant contends that the trial court erred by dismissing his postconviction petition at the second stage of postconviction proceedings because he demonstrated that he was denied the effective assistance of trial counsel, given that Dodds failed to communicate his desire to accept the State's eight-year guilty-plea offer. Specifically, defendant asserts that Dodds was ineffective because he refused to follow defendant's directive to counter the State's eight-year offer with an offer to plead guilty in exchange for seven years, and if the State did not accept that counteroffer, to accept the State's original eight-year offer. We disagree.

¶ 29 　　　　　　　　a. Ineffective Assistance of Counsel

¶ 30 Claims of ineffective assistance of counsel are judged under the familiar standard set

forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, a defendant "must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Manning*, 241 Ill. 2d 319, 326, 948 N.E.2d 542, 546-47 (2011) (citing *Strickland*, 466 U.S. at 688, 694).

¶ 31 In this case, defendant claims that Dodds' performance fell below an objective standard of reasonableness when Dodds failed to follow defendant's directive to communicate his counteroffer to the State, and if the State rejected his seven-year counteroffer, to accept the State's eight-year offer. Defendant's position in this regard misconstrues the role of a defendant in plea negotiations.

¶ 32                                         b. A Defendant's Role in Plea Negotiations

¶ 33 In *People v. Rainey*, 325 Ill. App. 3d 573, 582, 758 N.E.2d 492, 500 (2001), this court cited the supreme court decision in *People v. Brocksmith*, 162 Ill. 2d 224, 229, 642 N.E.2d 1230, 1232 (1994), as holding that there are five decisions that a criminal defendant has a right to make personally: (1) whether to plead guilty, (2) whether to waive the right to a trial by jury, (3) whether to testify, (4) whether to appeal, and (5) whether to request jury instructions on lesser-included defenses. *All* other decisions are matters of trial strategy on which the ultimate decision is left to defense counsel's sound judgment. Perhaps as significant, however–at least for purposes of this case–is the fact that each of these decisions that is "personal" to the defendant requires a simple "up or down vote"–that is, they require only a "yes" or "no" answer. For example, when a defendant elects to testify, his role is not to decide what questions his attorney will ask him once he is on the stand; his role is to decide whether he will get on the stand at all. See *People v. Ramey*, 152 Ill. 2d 41, 54, 604 N.E.2d 275, 281 (1992) (holding that trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy such as whether and how to conduct the examination of witnesses after consulting with his client). Likewise, when a defendant elects to seek a plea agreement, his role is not to "haggle" with the prosecutor by directing counsel during the negotiation process; his role is to decide whether to accept or reject the plea agreement that his counsel and the prosecutor ultimately reached.

¶ 34 Having outlined the criminal defendant's important–but limited–role in plea negotiations, we turn to plea negotiations generally.

¶ 35                                         c. Plea Negotiations Generally

¶ 36 Plea negotiations are generally governed by the principles of contract law. In 2004, the supreme court explained that the plea-negotiation process itself is akin to contract negotiations, as follows:

> "Although the application of contract law principles to plea agreements may require 'tempering in some instances' in order to satisfy concerns for due process, plea agreements are nonetheless subject to traditional principles of contract law absent such concerns. See [*People v.*] *Evans*, 174 Ill. 2d [320,] 326-27[, 673 N.E.2d 244, 247 (1996)]; *People v. Bouie*, 327 Ill. App. 3d 243, 246[, 763 N.E.2d 858, 860] (2002);

*Coleman v. United States*, 318 F.3d 754, 759 n.1 (7th Cir. 2003); *United States v. Muzika*, 986 F.2d 1050, 1054 (7th Cir. 1993) (the existence of a plea agreement is determined by ordinary contract principles of offer and acceptance). Pursuant to traditional principles of contract, the legal effect of a counteroffer is the rejection of a standing offer. *Sharp Electronics Corp. v. Deutsche Financial Services Corp.*, 216 F.3d 388, 395-96 (4th Cir. 2000), citing Restatement (Second) of Contracts § 36 (1981). A rejected offer cannot be revived by a later acceptance. See *Sementa v. Tylman*, 230 Ill. App. 3d 701, 705[, 595 N.E.2d 688, 692] (1992); *D'Agostino v. Bank of Ravenswood*, 205 Ill. App. 3d 898, 902[, 563 N.E.2d 886, 889] (1990); *Sharp Electronics Corp.*, 216 F.3d at 396. When a defendant rejects a State offer, the parties go 'back to the drawing board.' *Coleman*, 318 F.3d at 759." *People v. Henderson*, 211 Ill. 2d 90, 103-04, 809 N.E.2d 1224, 1232 (2004).

¶ 37    Understanding that plea negotiations are governed generally by the principles of contract law, we turn to the plea negotiations in this case, keeping in mind that defendant contends that Dodds was ineffective–that is, Dodds' actions fell below an objective standard of reasonableness–for failing to follow defendant's directive to first counter the State's offer, and if the State refused, to then accept the State's eight-year offer.

¶ 38                          d. The Plea Negotiations in This Case

¶ 39    In this case, the State at one point offered defendant, through Dodds, the opportunity to plead guilty and, in exchange, the State would recommend that the trial court impose a sentence of eight years in prison. Dodds, as was his duty, conveyed the State's offer to defendant, who responded by directing Dodds to "see if he could get [seven] years, but if not, then let [the State] know that [he would] take the [eight] years." Dodds refused, stating that he was "not going back to ask for [seven] years." Presumably, Dodds understood that if he countered the State's eight-year offer, the legal effect of that counteroffer (as the supreme court explained in *Henderson*, 211 Ill. 2d at 104, 809 N.E.2d at 1232) would be the rejection of the State's then-eight-year offer. In other words, Dodds correctly identified defendant's counteroffer for a seven-year deal as a rejection of the State's eight-year offer. Indeed, defendant's petition and accompanying documents show that he and Dodds argued about defendant's directive, indicating that defendant did not want to accept the eight-year offer without first countering it with a request to plead guilty in exchange for seven years in prison. The fact that defendant later indicated his desire to accept the State's eight-year offer at the July 2007 status hearing is of no consequence; at that point, the offer was "off the table." See *Brach v. Matteson*, 298 Ill. 387, 392, 131 N.E. 804, 806 (1921) (an offer "must be accepted before it is withdrawn or it becomes inoperative"); Restatement (Second) of Contracts § 36 (1981) (an offeree's power to accept may be terminated by, among other things, revocation by the offeror).

¶ 40    As Dodds' representation was objectively reasonable, defendant's claim that he made a substantial showing of a constitutional violation because he was denied the effective assistance of counsel must fail. In so concluding, we emphasize that underlying defendant's claim is his contention that he, not his counsel, is entitled to direct the plea-negotiation

process with the State. And we emphasize as well our rejection of that contention, deeming it wholly incompatible with the teaching of the Supreme Court of Illinois in *Brocksmith*. Accordingly, we reject defendant's claim that the trial court erred by denying his postconviction petition on that basis.

¶ 41                    B. Defendant's Claim That He Was Not Afforded Reasonable
                              Assistance of Postconviction Counsel

¶ 42    Defendant next contends that he should be afforded a new hearing because he was not provided reasonable assistance of postconviction counsel. Defendant asserts that Davis provided unreasonable assistance because Davis represented to the trial court that defendant's postconviction claim was that defendant was willing to plead guilty in exchange for a certain number of years but that the State did not offer that option, when in reality, defendant was claiming that Dodds failed to *communicate* his acceptance of the eight-year plea offer to the State. Based upon the particular circumstances of this case, we disagree.

¶ 43    The right to counsel in postconviction proceedings is wholly statutory. 725 ILCS 5/122-4 (West 2010). Thus, a defendant is entitled only to the level of assistance required by the statute; in this case, a "reasonable" level of assistance. *People v. Perkins*, 229 Ill. 2d 34, 42, 890 N.E.2d 398, 402 (2007). To assure that a defendant receive reasonable assistance, the supreme court has imposed the following specific duties upon postconviction counsel in Illinois Supreme Court Rule 651(c) (eff. Apr. 26, 2012): "counsel must (1) consult with the [defendant] either by mail or in person to ascertain the contentions of deprivation of constitutional rights; (2) examine the record of the trial court proceedings; and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the [defendant's] contentions." *Perkins*, 229 Ill. 2d at 42, 890 N.E.2d at 403.

¶ 44    Here, Davis filed a certificate, certifying that he complied with Rule 651(c). Defendant claims, however, that Davis nevertheless failed to adequately present his postconviction contention related to plea negotiations to the trial court. Our review of the record refutes defendant's claim in this regard in that the court's findings at the second-stage hearing show that the court clearly understood defendant's postconviction contention–namely, that Dodds failed to *communicate* his acceptance of the State's eight-year guilty-plea offer. However, the court found that the parties had failed to reach an agreement because "there was always a condition precedent." That "condition precedent," as the court put it, was that Dodds had to first ask for the seven years before defendant would accept the eight-year offer from the State.

¶ 45    The record affirmatively shows that defendant's postconviction claims were adequately presented to the trial court, and that the court understood and correctly ruled upon those claims. We understand defendant's concerns about his postconviction counsel and agree that counsel should have been a more vigorous advocate on defendant's behalf at the second-stage hearing on the State's motion to dismiss defendant's postconviction petition. Nonetheless, on this record, we reject defendant's contention that he should be afforded a new hearing.

¶ 46                                              III. CONCLUSION

¶ 47      For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment as costs of this appeal.


¶ 48      Affirmed.


¶ 49      JUSTICE COOK, specially concurring.

¶ 50      I concur in the decision to affirm the trial court's dismissal of defendant's postconviction petition. I disagree, however, with the suggestion that defendant's only role during the plea-negotiation process is to decide whether to accept or reject the plea agreement that his counsel and the prosecutor ultimately reached. An attorney has a duty to keep his or her client informed of all developments in the case and the attorney's progress in preparing the defense. "[A]part from the five decisions that ultimately belong to a defendant in a criminal case, trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy *after consultation with the client*." (Emphasis added.) *People v. Clendenin*, 238 Ill. 2d 302, 320, 939 N.E.2d 310, 321 (2010). *Clendenin* dealt with a stipulation to the admission of evidence which was not tantamount to a guilty plea. *Clendenin* held that defense counsel may validly waive a defendant's confrontation right by agreeing to such a stipulation "as long as the stipulation is part of counsel's trial tactics and strategy, *and the defendant does not object*." (Emphasis added.) *Clendenin*, 238 Ill. 2d at 320, 939 N.E.2d at 321. Defendant is not "entitled to direct the plea-negotiation process with the State" (*supra* ¶ 40), but defendant does have some say in the matter.